# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

MICHAEL ANTHONY WORDEN,    )
                            )
        Plaintiff,        )
                            )     No. 13 C 6281
     v.                  )
                            )     Magistrate Judge
CAROLYN W. COLVIN, Acting    )     Maria Valdez
Commissioner of Social Security,[1]   )
                            )
       Defendant.       )
                            )

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Michael Anthony Worden's claims for Disability Insurance Benefits. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion for summary judgment [Doc. No. 19] is denied and the Commissioner's cross-motion for summary judgment [Doc. No. 24] is granted.

## BACKGROUND

### I. PROCEDURAL HISTORY

On March 24, 2010, Michael Anthony Worden filed a claim for Disability Insurance Benefits, alleging disability since January 31, 2010. The claim was denied initially and upon reconsideration, after which Worden timely requested a

---

[1] Carolyn W. Colvin is substituted for her predecessor, Michael J. Astrue, pursuant to Federal Rule of Civil Procedure 25(d).

hearing before an Administrative Law Judge ("ALJ"), which was held on February 14, 2012. Worden personally appeared and testified at the hearing and was represented by counsel. Vocational expert Aimee Mowery and Worden's wife, Katherine Mazer Worden, also testified.

On March 29, 2012, the ALJ denied Worden's claim, finding him not disabled under the Social Security Act. The Social Security Administration Appeals Council then denied Claimant's request for review, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. FACTUAL BACKGROUND[2]

### A. Background

Plaintiff was born on June 6, 1970 and was 41 years old at the time of the ALJ hearing. He is married with two minor children and lives with his wife. Plaintiff received a G.E.D., and worked from 1997 to 1999 as a warehouse foreman; for a travel agency from 1999 to 2002; and as a stockroom manager from 2004 to 2010. After a work accident, Worden ultimately underwent a spinal fusion surgery, after which he experienced increasing pain, as well as headaches, which ultimately led him to quit his job.

### B. Medical Evidence

After a work related injury in 1986, Worden experienced back pain which did not improve with treatment. (R. 339.) He was treated with physical therapy, various medications, and steroids. An MRI demonstrated "significant desiccation of the L4-

---

[2] The following facts from the parties' briefs are undisputed unless otherwise noted.

L5 and L5-S1 levels." (R. 339.)  Considering that evidence and his failure to improve over time, Worden was ultimately recommended for a fusion surgery at L4-L5, L5-S1, which he underwent in 2002. (R. 329, 336-43.) His initial progress after the surgery was good, although he reported some pain. (R. 323, 326, 322.) Worden attended a work conditioning program in 2003, where he was assessed as capable of occasionally lifting and carrying thirty to fifty pounds, and frequently lift up to 20 pounds. (R. 356.)

Worden progressed through the end of 2005 although reporting occasional pain, which was treated with Vicodin, but was otherwise described as "doing quite well." (R. 301.)  However, he began to report headaches and pain associated with his course of physical therapy. (R. 315.) Worden was treated with injections of Depo-Medrol and Lidocaine for his back pain. (R. 306.) In July of 2003, Worden was cleared to return to work with a limitation that he lift a maximum of twenty pounds frequently and thirty to fifty pounds occasionally. (R. 314.) This restriction was confirmed by Worden's treating physician, Dr. Lorenz, who later that year stated that Worden had reached maximum medical improvement. (R. 304, 308, 311.)

In in 2007, Worden reported progressively increasing back pain. (R. 300.) He was prescribed Medrol and ibuprofen, and was recommended a short course of physical therapy. *Id.* He was eventually prescribed another non-refillable prescription of Vicodin (R. 307.) Worden was seen for a number of physical therapy sessions from May to June, 2007. The notes reflected that Worden was not progressing in treatment and had not met the stated goals of walking sixty minutes

without pain and demonstrating proper mechanics to lift ten pounds without pain. (R. 350.) In a 2007 assessment for work capabilities, Worden was recommended to lift no more than twenty pounds, and was again listed by Dr. Lorenz at having reached maximum medical improvement. (R. 331, 296.)

Worden also sought treatment for recurrent headaches, which he stated had begun to occur regularly in 2006. (R. 279.) The headaches were exacerbated by anxiety and stress. *Id.* He was prescribed Vicodin as needed, and ibuprofen as a general treatment. (R. 281.) At a further appointment, he noted that prescription drugs alleviated some symptoms of his headaches, and was additionally prescribed Maxalt and Treximet. (R. 276-77.) A 2011 evaluation suggested that Worden meet with a neurologist to form a long-term plan or with an ear, nose, and throat specialist if no neurological cause for the headaches could be found. (R. 271.) Also in 2011, Worden visited neurologist Dr. Kerry Disanto. Disanto's notes reflect that Worden had visited the emergency room in 2010 due to severe headaches. (R. 288.) He was diagnosed with cluster and migraine headaches. (R. 290.) The results of his neurological examination, however, were normal. (R. 288-91.) He was prescribed Zolmitriptan and Verapamil, and Dr. Disanto ordered MRI and MRA imaging studies of the neck and brain. (R. 291.) At a subsequent examination, Worden stated that he had headaches daily but that they were somewhat less severe. (R. 293.) Worden's MRI revealed that his left maxillary sinus was "filled with a large retention cyst," but the imaging studies were otherwise normal. (R. 282.)

In July 2010 Worden was evaluated by Dr. Stanley Simon, a consultative examiner. (R. 249-253.) In regard to the range of motion in Worden's lumbar spine, Dr. Simon's evaluation noted that Worden had 60 degrees of flexion, less than five degrees of extension, and fifteen degrees of left and right lateral bending; otherwise, however, he demonstrated a normal range of motion in his elbows and wrists. (R. 249.) Dr. Simon's report noted that Worden was able to get on and off the examination table without difficulty and could walk more than fifty feet without support. He demonstrated normal grip strength and had full range of motion in his hands, shoulders, elbows, and wrists. Worden's straight leg raise test was negative. (R. 252.) Worden's mental status examination was normal. *Id.*

Also in July 2010, Dr. Francis Vincent, a medical consultant, conducted an RFC determination based on a review of Worden's medical records. (R. 255-262.) Dr. Vincent concluded that Worden could occasionally lift twenty pounds and could frequently lift ten pounds. (R. 256.) He found that Worden was able to stand and walk, with normal breaks, for about six hours in an eight-hour workday, and sit for the same amount of time. *Id.* He found that Worden could push or pull without limitation. *Id.* He further stated that Worden could never climb ladders, ropes, or scaffolds, but could occasionally balance, stoop, kneel, crouch, or crawl. (R. 257.) Dr. Vincent attributed the limitations to Worden's decreased range of motion in his lumbar spine due to his surgery. (R. 256-57.)

At the end of the hearing, Plaintiff's attorney requested that the record be held open so that medical records from his treating psychologist, Dr. Matthew

Skarbek, could be submitted. Dr. Skarbek had treated Worden for thirty sessions between 2010 and 2012. (R. 371.) He diagnosed Worden with post-traumatic stress disorder and mixed anxiety and depression. (R. 386.) Dr. Skarbek recommended therapy once per week, and that Worden see a physician or psychiatrist for medical evaluation. *Id.* Dr. Skarbek's later treatment notes reflect that Worden often discussed his anxiety and depression as related to his family life, and frequently stated that his pain exacerbated those problems. (R. 388-412.) The notes also reflect Worden's statements that his anxiety and depression were helped somewhat by his course of therapy, although his mood fluctuated over time. *Id.* In 2011, Worden also began taking Lexapro for depression. (R. 288.)

In 2012, Dr. Skarbek completed a residual functional capacity questionnaire for Worden. (R.371-77.) In his questionnaire, Dr. Skarbek noted diagnoses of major depressive disorder and post-traumatic stress disorder. He stated that Worden had been "experiencing depression and anxiety, with anger outbursts related to chronic pain," and that "Mr. Worden's depression and anxiety have improved," and his "anger outbursts are less frequent," although the chronic pain and frustration due to the pain remained. (R. 371.) Dr. Skarbek noted that Worden would "continue to experience periods of depression and anxiety, followed by periods of improved function for days or weeks," and that he "appear[ed] to respond well to psychotropic medication and bi-weekly psychotherapy." *Id.* Dr. Skarbek concluded that: Worden had a limited but satisfactory ability to maintain attention for two-hour periods and regular and punctual attendance, to perform at a consistent pace without

unreasonable rest periods, and to deal with normal work stress; and that he had unlimited or very good abilities in all other areas related to unskilled work. (R. 373.) Dr. Skarbek also concluded that Worden had a limited but satisfactory ability to carry out semi-skilled and skilled work, (R. 374), and that he had a limited but satisfactory ability to interact appropriately with the general public. With regard to Worden's functional limitations, Dr. Skarbek concluded that Worden had moderate restrictions in maintaining social functioning and in maintaining concentration, persistence or pace, no restrictions in activities of daily living, and that he had demonstrated no episodes of decompensation. (R. 375.)

C.   **Witness Testimony**

Worden testified that he experienced headaches triggered by light, which had been occurring for "a long time." (R. 36.) He testified that he was unable to work because he experienced pain that shoots through his fingers, making it impossible to grip. He also testified that he experienced pain in his lower back which would extend to his neck, and which felt like "someone is coming up and kicking you every time." (R. 36-37.) The pain was constant, and occurred every day. (R. 37.) Vicodin helped some with the pain, but that the pain would return shortly after taking the medication. *Id.* He testified that he experienced the pain every day and that lying down for a period of time would relieve the pressure, but not the pain. Worden also testified that he had two to three headaches per week, and that none of the prescribed medicines had help alleviate his symptoms. (R. 44.) He stated that his pain, overall, was currently an eight on a one-to-ten scale, and that it was normally

a seven. (R. 53-54.) Worden also stated that his sleep apnea kept him awake at night. (R. 40.)

Worden stated that he had left his prior employment because the pain had had made him irritable toward other employees and made him unable to maintain the pace required by the work. (R. 38.) He had begun treatment with a psychologist six months after he had "left the other job because of stress." (R. 38.) He was having reactions toward his family similar to the outbursts he had been having at work, and he was worried about the effect on his children. *Id.*

In terms of functional ability, Worden stated that he could walk about one hundred feet in "reasonable comfort," but that he would have to sit down afterward. (R. 45.) He stated that he could not stand for more than a half an hour without needing to sit or lie down. (R. 46.) Worden also stated that he was unable to twist, bend at the back, kneel, or crouch. (R. 49-50.) He also stated that he had difficulty climbing stairs, and was unable to climb a ladder. (R. 50.) Worden stated that, on a daily basis, he stayed at home with his 1 year-old daughter and "supervised her," (R. 39), but that he was unable to lift his children because of his pain. (R. 47.) His wife did "a lot" of the housework. Worden stated that he did not cook, and that his wife did the grocery shopping. He stated that he did cleaning around the house "once in a great while," and that he would take out the garbage, a task made easier by having wheeled garbage containers. (R. 51-52.) He stated that he did not do yard work because he had a service to do so, and it would take him too much time because of his limitations. (R. 52-53.)

Worden also testified that he experienced frequent panic attacks, for which he was seeking treatment. (R. 41.) He did not like going out in public, but that he would go out with his wife for dinner. (R. 42.) He also stated that, while he did not do shopping for the household, he would run errands to the local drug store. (R. 42.) As a result of anxiety, he had no appetite and had lost 80 pounds in the past two years. (R. 43.)

Katherine Mazer Worden, Plaintiff's wife, also testified. She stated that their older daughter attended day care, and that Mr. Worden would drive her to day care in the mornings, about two miles away. (R. 56.) She stated that she performed the majority of the housework, and that Mr. Worden had difficulty remembering household tasks which she had asked him to do, but that this had been a long-term problem. (R. 57-58.) Mrs. Worden testified that the symptoms of Mr. Worden's depression had worsened since his back surgery. (R. 60.) She stated that, after Mr. Worden had left work in 2010, the couple had been "fighting a lot" and she had begun seeing a psychologist. *Id.* She noted that, after Mr. Worden had also begun seeing a psychologist, she had seen positive changes. (R. 60-61.)

### D. <u>Vocational Expert Testimony</u>

The Vocational Expert ("VE") identified Worden's past relevant work as warehouse manager, stock supervisor, and postal clerk. (R. 65-66.) The ALJ then asked the VE about a hypothetical person with Worden's age, education, and work experience, and a residual functional capacity ("RFC") limiting him to light work. The ALJ further limited the hypothetical individual's RFC to occasionally climbing

ramps and stairs but never climbing ladders, ropes or scaffolds; frequently

balancing; and occasionally balancing, stooping, or kneeling, but never crouching or

crawling. The ALJ also added that the individual could perform only tasks learned

by demonstration or in 30 days or less. (R. 67-68.) The VE determined that the

hypothetical individual could not perform Worden's past work, but that he could

perform the positions of information clerk, interview clerk, and mail clerk. (R. 67-

68.) The ALJ then further limited the hypothetical individual to jobs involving work

that is not considered fast-paced or that did not involve strict production quotas,

and that occurred in a low-stress environment. (R. 69.) The VE stated that, with

respect to light work, the individual could no longer perform the job of information

clerk but could perform the additional job of ticket taker. (R. 69.) With respect to

sedentary work, the individual could also perform the job of inspector check

weigher. (R. 70.)

### E. __ALJ Decision__

The ALJ found at step one that Worden had not engaged in substantial

gainful activity since his alleged date of onset, January 31, 2010. At step two, the

ALJ concluded that Worden had severe impairments of degenerative disk disease

and depression. The ALJ concluded at step three that the impairments, alone or in

combination, do not meet or medically equal a Listing, specifically considering

Listings 1.04 and 12.04. The ALJ then determined that Worden retained the RFC to

perform light work, limited in certain respects. Specifically, the ALJ stated that

Worden could only occasional climb ramps or stairs, but could never climb ladders,

ropes, or scaffolds. He could occasionally balance or stoop, but never kneel, crouch, or crawl. He was also limited to performing unskilled tasks which could be learned by demonstration or in 30 days or fewer. The ALJ concluded at step four that Worden could not perform his past relevant work. At step five, based upon the VE's testimony and Worden's age, education, work experience and RFC, the ALJ concluded that Plaintiff could perform jobs existing in significant numbers in the national economy, leading to a finding that he was not disabled under the Social Security Act.

## DISCUSSION

## I. ALJ LEGAL STANDARD

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a claimant is disabled, the ALJ considers the following five questions in order: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform her former occupation? and (5) Is the claimant unable to perform any other work? *See* 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step 3 or step 5 leads to a finding that the claimant is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step 3, precludes a finding of disability. *Id.* The claimant bears the burden of proof at steps 1 through 4. *Id.* Once the claimant shows an inability to perform past work, however, the burden then shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II.  JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is therefore limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding an ALJ's decision must be affirmed even if "'reasonable minds could differ'" as long as "the decision is adequately supported") (citation omitted).

## III.   ANALYSIS

Worden argues that the ALJ erred at step three of the five-step Social
Security Disability analysis, in determining his residual functional capacity for
work, and in formulating the questions posed to the VE. But because the ALJ did
not err in these respects, and because her decision was otherwise supported by
substantial evidence as described below, it is affirmed.

### A.   Step Three Analysis

Worden challenges the ALJ's step three determination on a number of
grounds. He argues first that the ALJ erred in finding that his impairments did not
meet or equal Listing 1.04. In her decision, the ALJ concluded that Worden did not
"manifest clinical signs and findings that meet the specific criteria of any of the
Listings. In reaching this conclusion, the opinions of the State Agency Medical
Consultants have been considered. These medical professional have evaluated this
issue at the initial and reconsideration levels of the administrative review process
and reached the same conclusion." (R. 16.)

Without citation, Worden claims that the ALJ's conclusion on this point is
"boilerplate" and therefore entitled to no deference by this Court. In the context of
determining a claimant's credibility, the Seventh Circuit has repeatedly criticized
certain frequently recurring language in ALJ decisions as boilerplate because the
language "fails to link the conclusory statements made with objective evidence in
the record," *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013), and therefore
frustrates judicial review by providing the reviewing court "no clue to what weight
the trier of fact gave the testimony." *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir.

2010). In addition to occurring in the ALJ's step three rather than RFC analysis, the passage criticized by Worden in fact explicitly identifies the evidence the ALJ considered in reaching her conclusions: the uncontested reports of the state agency physicians which contradict Worden's claims. There was no error on this account.

Worden therefore appears to contend that the ALJ's reliance on the medical opinions of record was insufficient to support her step three conclusion, but this is incorrect. Because Worden failed to put forward a medical opinion contradicting those opinions, the ALJ did not err in determining relying on the opinions of record to determine that Worden's impairments did not meet or equal a listed impairment. *See Filus v. Astrue*, 694 F.3d 863, 867 (7th Cir. 2012) ("[Claimant] urges that his medical records compel a finding that he has the equivalent of [Listing 1.04]. But he disregards the opinions from the two state-agency physicians who concluded that he did not meet or medically equal any listed impairment. Because no other physician contradicted these two opinions, the ALJ did not err in accepting them."); *see also Whalen v. Astrue*, 630 F. Supp. 2d 940, 949 (N.D. Ill. 2009). And while Worden also argues that the ALJ overlooked other evidence in reaching this conclusion, (Pl.'s Mem. at 6), he fails to specify what evidence was overlooked or how that evidence would have changed the decision. The ALJ did not err in evaluating Listing 1.04.

Worden also argues that the ALJ failed to properly apply the "special technique" applicable to mental impairments in evaluating Listing 12.04. When evaluating whether a claimant's mental impairments meet or equal a Listing, the ALJ first evaluates the medical record to determine whether the claimant has a

medically determinable impairment, and she must document her findings with evidence from the record. *See* 20 C.F.R. § 404.1520a(b)(1). If such an impairment is found, the ALJ then rates the claimant's degree of functional limitation in four areas: "[a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." *Id.* §§ 404.1520a(b)(2), 404.1520a(c)(3). The first three functional areas are rated on a five-point scale: none, mild, moderate, marked, and extreme. *Id.* § 404.1520a(c)(4). Episodes of decompensation are rated on a four-point scale: none, one or two, three, and four or more. *Id.* After rating the degree of functional limitation, an ALJ must determine if the claimant's impairment is severe and, if so, it meets or equals a listed impairment. *See id.* § 404.1520a(d). In order to meet or equal Listing 12.04, a claimant must show the presence of a medically documented condition (the "A criterion") accompanied by at least two of: marked restrictions in daily activities, marked difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence, or pace, or repeated episodes of decompensation (the "B criterion").[3] 20 C.F.R. Part 404, Subpart P, App. 1, § 12.04.

In her decision, the ALJ rated Worden's functional limitations, finding that Worden had a mild restriction in activities of daily living; a mild restriction in social functioning; a moderate restriction in concentration, persistence or pace; and had demonstrated no episodes of decompensation. (R. 16.) Worden argues that the ALJ

---

[3] A claimant's impairment may also meet or equal the listing based on a "[m]edically documented history of chronic affective disorder" which meets certain other characteristics. *See* 20 C.F.R. Part 404, Subpart P, App. 1, § 12.04(C). Worden, however, has not alleged that his impairments met or equaled this part of the Listing.

failed to adduce adequate medical evidence to support these conclusions. It is true that, in the section of the opinion explicitly discussing these findings, the ALJ mentioned only Worden's statements about his own activities and abilities. (R. 16.) However, later in the opinion the ALJ discussed various factors that supported the findings, including the opinion of Dr. Skarbek, Worden's treating psychologist, who concluded that Worden's impairments did not met the severity outlined in the Listing. (R. 20, 375.) While this evidence was not discussed in the same section of the opinion where the ALJ articulated her conclusions as to Worden's functional limitations, "it is proper to read the ALJ's decision as a whole, and because it would be a needless formality to have the ALJ repeat substantially similar factual analyses at both steps three and five, [the Court] we consider[s] the ALJ's treatment of the record evidence in support of both his conclusions at steps three and five." *Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004). In this circumstance, "[t]he ALJ's discussion at step 3, when considered in light of his discussion of [Worden's] RFC, sufficiently met her 'duty to articulate' " because it "provide[d] the necessary detail to review the ALJ's step 3 determination in a meaningful way." *Curvin v. Colvin*, 778 F.3d 645, 650 (7th Cir. 2015) (citation omitted) (holding no error where "[t]he ALJ provided the discussion of [claimant's] severe and non-severe impairments, the objective medical evidence, and her credibility directly after step 3 when he determined her RFC").

Furthermore, even had the ALJ erred by failing to specify the evidence supporting her conclusion in this section, any error would be harmless. Worden

challenges only the ALJ's conclusions that Plaintiff experienced mild limitations as to social functioning and moderate limitations as to concentration, persistence or pace. (Pl.'s Mem. at 8.) In order to meet the "B criterion," a claimant must show marked limitations in at least one of those areas. *See* 20 C.F.R. Part 404, Subpart P, App. 1, § 12.04. However, the only medical evidence of record potentially favorable to the Plaintiff—the evaluation of his treating psychologist, Dr. Skarbek—found him to have only moderate limitations in those two areas. (R. 375) Therefore—even were the ALJ's to have erred—Worden cannot show that her decision would be different on remand, and any such error would be harmless. While "[t]he ALJ's application of the special technique is not a model for compliance," this Court "will not remand a case for further specification when [it is] convinced that the ALJ will reach the same result." *Pepper*, 712 F.3d at 367. The ALJ's step three analysis does not require remand in this case.

Worden also argues that the ALJ erred because the she did not properly document her findings with regard to Listing 12.04's "A" criterion. Under that Listing, in order for an impairment to be considered disabling under the Listing, a claimant "must either (1) satisfy the requirements of both criteria A and B or, alternatively, (2) satisfy the requirements of criterion C." *Smith v. Colvin*, 931 F. Supp. 2d 890, 900 (N.D. Ill. 2013); *see* 20 C.F.R. Part 404, Subpart P, App. 1, § 12.04. As discussed above, the ALJ appropriately concluded that Worden had not satisfied the "B" criterion. (R. 16.) Worden "could not have qualified for Listing

12.04 regardless of whether or not []he satisfied criterion A, so the ALJ's failure to discuss that criterion was not an error." *Smith*, 931 F. Supp. 2d at 900.[4]

## B. RFC Analysis

Worden also contends that the ALJ erred in a number of ways when determining his RFC, as detailed. An RFC "represents the most that an individual can do despite his or her limitations or restrictions." SSR 96-8p, 1996 WL 374184, at *4;[5] *see* 20 C.F.R. § 1545(a)(1). This determination is used at step four to determine whether a claimant is capable of performing his past work, and at step five to determine whether a claimant is capable of performing other work. *See id.* at *3-4. An ALJ must make her RFC determination based on all of the relevant evidence in the case record. *Id.* at *5.

### 1. Narrative Discussion

Worden first argues that the ALJ's RFC analysis was inadequate because it was not sufficiently supported by a narrative discussion of the evidence as required by Social Security Ruling 96-8p. He contends that the ALJ erred by failing to provide a sufficient function-by-function analysis of his RFC. (Pl.'s Mem. at 8.) However, "[a]lthough the 'RFC assessment is a function-by-function assessment,' the expression of a claimant's RFC need not be articulated function-by-function; a narrative discussion of a claimant's symptoms and medical source opinions is sufficient." *Knox v. Astrue*, 327 F. App'x 652, 657 (7th Cir. 2009) (quoting SSR 96-

---

[4] Worden makes no argument that he met or equaled the "C" criterion of Listing 12.04.
[5] Interpretive rules, such as Social Security Rulings ("SSR"), do not have force of law but are binding on all components of the Agency. 20 C.F.R. § 402.35(b)(1); *accord Lauer v. Apfel*, 169 F.3d 489, 492 (7th Cir. 1999).

8p) (internal citations omitted). The ALJ's RFC determination does not fail for lack of an explicit function-by-function articulation.

While not requiring a function-by-function analysis, however, an ALJ's RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 WL 374184, at *7; *see Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). Worden contends that the ALJ's decision did not contain an adequate narrative discussion because the ALJ simply identified pieces of evidence without explaining how that evidence supported her conclusions. Contrary to Worden's contentions, however, the ALJ provided a sufficient discussion here, and her decision was supported by substantial evidence. The ALJ specifically reviewed the medical evidence relating to Worden's physical and mental impairments, (R. 18-19), and she cited the opinions of state agency medical consultants, whose limitations to light work and other restrictions were ultimately incorporated into her RFC determination. (R. 19-20.) The ALJ also discussed the opinion of Worden's treating physician and incorporated his conclusions as to the functional effects of Worden's mental impairments into Worden's RFC as well. (R. 20.) In this case, the ALJ provided an appropriate narrative discussion, and her RFC determination was supported by substantial evidence. *See Knox*, 327 F. App'x at 657 ("The ALJ satisfied the discussion requirements by analyzing the objective medical evidence, [claimant]'s testimony (and credibility), and other evidence.").

The cases Worden cites in support of his argument are not helpful. In addition to discussing a different legal issue (the "substantially justified" requirement for avoiding the assessment of attorney's fees under the Equal Access to Justice Act), the Seventh Circuit in *Conrad v. Barnhart* discussed an ALJ's failure to discuss a treating physician's report, rather than a failure to provide a sufficient narrative discussion of the claimant's RFC. *See* 434 F.3d 987, 991 (7th Cir. 2006). And in *Briscoe ex rel. Taylor v. Barnhart*, the ALJ had provided for restrictions on lifting, sitting, and standing in a claimant's RFC, but "did not explain how he arrived at" those conclusions. *See* 425 F.3d at 352. In this case, in contrast, the ALJ explained the RFC determination by referencing the assessments of both Worden's treating physician and the state agency consultants, as discussed above. The ALJ did not err in this respect

### 2.     The ALJ's consideration of the evidence

Worden also claims that the ALJ erred in her RFC determination because she ignored evidence not supporting her conclusion. While an "ALJ does not need to discuss every piece of evidence in the record, the ALJ may not analyze only the evidence supporting her ultimate conclusion while ignoring the evidence that undermines it." *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014). Worden first argues that the ALJ overlooked evidence of "abnormal conditions" in the assessment of the consulting examiner, specifically medical reports of Worden's decreased range of motion in his spine. (Pl.'s Mem. at 9.) This is simply incorrect: the ALJ explicitly discussed the consulting examiner's report and the decreased range of movement

Worden argues was overlooked in rendering her RFC determination. (R. 18.)
Furthermore, the ALJ accounted for this decreased range of movement by
incorporating limitations on climbing, kneeling, stooping, or crawling pursuant to
the state agency physician's RFC assessment, (R. 17), which were consistent with
the RFC assessments provided by the medical consultants. The ALJ simply did not
overlook this evidence as Worden claims.

Worden also argues that the ALJ overlooked notes from his treating
physician of treatment received prior to the alleged onset of disability, including a
physical therapy report which stated that Worden had not been progressing and
had showed only minor increases in strength over the course of his treatment; that
Worden had not met short-term goals of lifting ten pounds or walking 60 minutes
without pain; that Worden had reached "maximum medical improvement" and
placing him on a restriction to lift no more than twenty pounds; and MRI evidence
indicating "hyperintense lesions which suggested a cause of from an [sic]
hemangioma." (Pl.'s Mem. at 10.) However, in her decision, the ALJ in fact
addressed each of the pieces of evidence Worden argues was overlooked, including
the treatment notes from Drs. Lorenz and Worden's other physicians, (R. 18, 20)
and the MRI evidence. (R 18.) The ALJ also limited Worden's RFC consistent with
the evidence he argues the ALJ overlooked, including limiting Worden to lifting no
more than 20 pounds at any time and lifting or carrying no more than ten pounds
frequently. *See* 20 C.F.R. § 404.1567(b). And, aside from stating that the ALJ did
not address these pieces of evidence specifically, Worden does not explain how they

are inconsistent with the ALJ's RFC determination. The ALJ did not err in her evaluation of these pieces of evidence.

Worden also contends that the ALJ did not consider his mental and physical limitations in combination when determining his RFC, as an ALJ must do. *See* 20 C.F.R. § 404.1545(a)(2). In support of this argument, Worden alleges that the ALJ ignored treatment notes from Dr. Skarbek stating that his physical pain exacerbated the symptoms from his mental impairments. (Pl.'s Mem. at 11.) In these notes, Dr. Skarbek recorded Worden's complaints as to the symptoms of his mental impairments which included problems with his temper, difficulties in his relationships with his parents and family members, fluctuations in mood, and exacerbations of these problems due to pain. (Pl.'s Mem. at 11.) But the ALJ discussed Dr. Skarbek's treatment notes, noted Worden's diagnoses of post-traumatic stress disorder, depression, and anxiety, and discussed the anger outbursts and relationship to pain that Worden argues was overlooked. (R. 19.) Furthermore, Dr. Skarbek gave a functional evaluation of Worden's abilities based on his treatment, much of which the ALJ adopted in her RFC determination, as will be discussed below. The ALJ simply did not ignore Dr. Skarbek's records as Worden contends.

Worden also takes issue with the ALJ's discussion of the results of an MRI. In her evaluation, the ALJ noted a December 2011 MRI which "revealed complete opacification of the left maxillary sinus which was filled with a large retention cyst," but was "otherwise negative" and detected no other abnormalities. (R. 18.) Worden

claims that it is unclear the conclusion that the ALJ drew from this evidence and—

somewhat contradictorily—that the ALJ "played doctor" in drawing an adverse

conclusion from the MRI. (Pl.'s Mem. at 9-10.) Contrary to Worden's claims,

however, the ALJ did not err in her consideration of the MRI. The ALJ's opinion is

clear that the otherwise negative MRI supported her RFC determination that

Worden's headaches were not disabling. (R. 18.) And, contrary to Worden's

arguments, the ALJ did not "play doctor" in reaching this conclusion. "The cases in

which [the Seventh Circuit has] concluded that an ALJ 'played doctor' are ones in

which the ALJ ignored relevant evidence and substituted her own judgment." *Olsen*

*v. Colvin*, 551 F. App'x 868, 874 (7th Cir. 2014) (citing case). Here, however, the ALJ

is quoting directly from the medical evidence, and she later relied on the opinions of

physicians who in turn had evaluated the MRI evidence in concluding that Worden

was capable of light work. (R. 19-20.) The ALJ did not err in her consideration of the

MRI. *See Turner v. Astrue*, 390 F. App'x 581, 584 (7th Cir. 2010) ("We are satisfied

that the ALJ considered the MRI through the perspective of the various doctors who

reviewed the MRI report."). Furthermore, while arguing that the ALJ improperly

considered the MRI, Worden "does not point to any medical source showing that the

ALJ misconstrued the MRI[]." *Olsen*, 551 F. App'x at 874. In this case, the ALJ did

not substitute her judgment and there was no error in her discussion of the medical

evidence. *See id.* ("The ALJ's discussion, unfortunately, is rife with undefined

medical jargon, so her conclusion is not as transparent as it could be. But [Worden]

has not made a serious effort to show that the ALJ's conclusion is incorrect. It was [Worden]'s burden to present medical evidence supporting her claim of disability.")

### C.     <u>Assessment of Worden's Credibility</u>

Worden also argues that the ALJ erred in making her credibility determination. When a claimant alleges limitations arising from symptoms such as pain, an ALJ must evaluate the claimant's credibility "to determine the extent to which the symptoms limit the individual's ability to do basic work activities." SSR 96-7p, 1996 WL 374186, at *2; 20 C.F.R. § 404.1529(c). In rendering a credibility determination, the ALJ must make findings "based on a consideration of the entire case record," which includes "the medical signs and laboratory findings, the individual's own statements about the symptoms, any statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record." *See* 96-7p, 1996 WL 374186, at *3.

A reviewing court grants an ALJ's credibility determination "considerable deference" and will overturn the determination only if "patently wrong." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009) (quoting *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir.2006)) (internal quotation marks omitted). In making her determination, the ALJ must consider factors specified in 20 C.F.R. § 404.1529(c), "and must justify the credibility finding with specific reasons supported by the record." *Id.* However, in conducting its review the court "merely examine[s] whether the ALJ's determination was reasoned and supported. It is only when the ALJ's

determination lacks any explanation or support that we will declare it to be 'patently wrong' and deserving of reversal." *Elder*, 529 F.3d at 413-14 (quoting *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003)) (further quotation and internal quotation marks omitted).

Worden argues that the ALJ did not adequately support her findings on credibility. She claims that "[t]he ALJ failed to connect any statements by the claimant to the record evidence and did not articulate with specificity to provide to Plaintiff or this Court the weight that the ALJ gave to plaintiff's statements and the reasons for that weight." (Pl.'s Mem. at 12.) Plaintiff's argument focuses mostly on the ALJ's statement that "the claimant's statements concerning the intensity, persistence and limiting effects of [his impairments] are not credible," and that those "symptoms and complaints are not supported by objective findings consistent with a finding of total disability." (R. 18.) Worden is correct that this language *alone* is insufficient to support an ALJ's credibility determination, *see* SSR 96-7p, 1996 WL 374186, at *5, and that the Seventh Circuit has characterized such language as "meaningless boilerplate" which "yields no clue to what weight the trier of fact gave the testimony." *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012) (quoting *Parker*, 597 F.3d at 922). In support of her argument, Plaintiff cites *Filus v. Astrue*, 694 F.3d 863 (7th Cir. 2012) (although he actually references that case's discussion of *Bjornson*). In both cases, the claimant had complained about language in an ALJ's determination which, in fact, was similar to that about which Plaintiff complains in this case. *See Filus*, 671 F.3d at 868.

In *Filus* itself, however, the Seventh Circuit concluded that—even where an ALJ employs the criticized boilerplate language—"[i]f the ALJ has otherwise explained [her] conclusion adequately, the inclusion of this language can be harmless." *Id.* That is the case here, and Worden's contention that the ALJ did not specify the reasons for her credibility finding is simply incorrect; instead, she supported her conclusion as to credibility with analysis of the appropriate considerations. *See* 20 C.F.R. § 404.1529(c)(3). The ALJ correctly compared Worden's testimony as to his very limited abilities to sit, stand, and walk to the testimony of both himself and his wife, which established his ability to provide some care for his young daughters and to perform some household maintenance work. (R. 19). These were appropriate considerations. *See Olsen*, 551 F. App'x at 876 ("The ALJ correctly compared [claimant's] daily activities . . . to her testimony that she has a very limited ability to sit, stand, and walk and concluded that Olsen was not credible as to the intensity and persistence of her symptoms."). The ALJ also noted that, although Plaintiff's stated that he had begun mental health treatment due to his mental impairments, his wife stated that he had begun treatment due to marital difficulties and had "always had memory problems." (R. 19.) The ALJ also cited medical evidence of Plaintiff's physical examinations which—aside from the limited range of motion and headaches elsewhere mentioned by the ALJ—were normal or unremarkable. (R. 250-53; 288-95). In combination with the other evidence discussed above, the ALJ's reliance on the medical evidence in this case was appropriate. *See Simila v. Astrue*, 573 F.3d 503, 519 (7th Cir. 2009). Furthermore,

the ALJ did not completely discount Worden's statements, as she limited his RFC to light work with additional restrictions. Worden does not challenge any of the specific reasons put forward by the ALJ, which are sufficient to provide a credibility determination that is not "patently wrong." *See Schmidt v. Astrue*, 496 F.3d 833, 844-44 (7th Cir. 2007).

Worden does make one specific challenge to the ALJ's credibility determination relating to her consideration of his course of treatment: he notes that the ALJ discredited the effects of Worden's sleep apnea because he refused treatment with a CPAP[6] device without inquiring into the reasons for that refusal. (Pl.'s Mem. at 10.) An ALJ may consider a claimant's statements as to the effects of his impairments not credible if the record demonstrates that the claimant is not following treatment as prescribed and there is no "good reason" for that failure. SSR 96-7p, 1996 WL 374186, at *7. However, the ALJ cannot draw such a negative inference "without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." *Id.* Such reasons "may include an inability to afford treatment, ineffectiveness of further treatment, or intolerable side effects." *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012). Worden is correct that, in her decision, the ALJ did not discuss any potential reasons for Worden's failure to pursue this treatment, and the record does not reflect any investigation by the ALJ into those reasons. This was error. *See Roddy v.*

---

[6] "A continuous positive airway pressure ("CPAP") device delivers air pressure to a mask, which prevents sleep apnea by keeping the upper airway passages open." *Scrogham v. Colvin*, 765 F.3d 685, 689 (7th Cir. 2014).

*Astrue*, 705 F.3d 631, 638-39 (7th Cir. 2013) ("The agency requires ALJs to inquire about a claimant's reasons for not seeking treatment.").

However, although the ALJ erred in this respect, the Court can "say with great confidence" that the ALJ would not reach a different result were the Court to remand on this issue, and accordingly the error is harmless. *See McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011). Although the ALJ erred in failing to inquire into the reasons Worden refused CPAP treatment, he neither points the Court to evidence of those reasons in the record, nor provides any reasons in his argument. *Cf. Roddy*, 705 F.3d at 639 (remanding where "the ALJ merely asked [claimant] why she had not sought treatment, and asked no further questions after she explained that she could not afford treatment after having lost her insurance"). Furthermore, "an ALJ's credibility assessment and ultimate determination need not be perfect." *Perez v. Astrue*, 881 F. Supp. 2d 916, 947 (N.D. Ill. 2012). Despite the fact that the ALJ erred in this respect, the Plaintiff's failure to pursue CPAP treatment played a relatively small part in the ALJ's overall determination, and the other bases supporting that opinion were not erroneous, as discussed above. In this situation, the ALJ's error was harmless. *See Kittelson v. Astrue*, 362 F. App'x 553, 558 (7th Cir. 2010) ("Another ALJ might have determined that [claimant's] limitations were moderate or even severe, but substantial evidence supports the ALJ's conclusion and he "rationally articulated" its basis. Accordingly, the ALJ's error in failing to consider the significance of [claimant's] lack of health insurance was harmless.").

Worden also criticizes the ALJ's reliance on his failure to quit smoking in rendering her credibility determination. Although not explicitly linking this observation to her assessment of Worden's credibility, the ALJ did note that Worden had been advised to stop smoking because it could be associated with his chronic headaches, but that Worden did not do so. (R. 18-19.) It is true that the Seventh Circuit has criticized the failure to stop smoking as "an unreliable basis on which to rest a credibility determination." *See Shramek v. Apfel*, 226 F.3d 809, 813 (7th Cir. 2000). Although Worden's case is different from *Shramek* because there "no medical evidence directly linked" smoking to the claimant's impairments, *id.* at 813, this was a small part of the ALJ's credibility determination, and any error on this account does not require reversal. *See Carroll v. Barnhart*, 291 F. Supp. 2d 783, 796 (N.D. Ill. 2003) (finding that "the ALJ's reliance on Claimant's smoking habits had no effect on Claimant's disability determination, and thus does not justify a reversal" where credibility determination was otherwise supported).

### D.      Questions to the Vocational Expert

Worden also argues that the ALJ erred by failing to include all relevant mental limitations in her questions to the VE. In this case, the ALJ's questions to the vocational expert limited the hypothetical individual to light, unskilled work with tasks that could only be performed on demonstration or in learned in thirty or fewer days, and to work that was not considered fast-paced. (R. 67-69.) "When an ALJ poses a hypothetical question to a vocational expert, the question must include all limitations supported by medical evidence in the record." *Stewart v. Astrue*, 561

F.3d 679, 684 (7th Cir. 2009). Worden argues that, in suggesting these limitations, the ALJ "did not include such matters as anger outbursts, social withdrawal, and the effects of physical pain upon plaintiff's ability to stand, walk, lift, bend stoop, maintain attention, persistence, concentration and pace for a five-day week, eight hours per day." (Pl.'s Mem. at 12.)

It is true that the Seventh Circuit has specified that a limitation to unskilled work alone does not account for a claimant's impairments with regard to concentration, persistence or pace. *See O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010). But the Seventh Circuit has also specified that, where a medical opinion translates a claimant's functional limitations arising from mental impairments into an RFC assessment, the ALJ does not err in relying on that assessment in her questions to the VE. *See Johansen v. Barnhart*, 314 F.3d 283, 289 (7th Cir. 2002). That is what happened in Worden's case. In reaching her RFC determination, the ALJ specifically relied on the evaluation of Worden's treating psychologist, Dr. Skarbek. (R. 20.) Dr. Skarbek's evaluation discussed Worden's anger outbursts and their relation to his pain, as well as his anxiety and depression, (R. 371), and then provided a functional analysis of Worden's abilities which indicated that Worden had a limited but satisfactory ability to deal with normal work stress, perform at a consistent pace without an unreasonable number and length of rest periods, and carry out skilled and semi-skilled work. (R. 374.) The ALJ, more conservatively, limited Worden's RFC to only unskilled work. (R. 19.) In this circumstance, then, the ALJ appropriately relied on Dr. Skarbek's opinion to

translate Worden's mental impairments into an RFC, and the failure to explicitly note more specific limitations in her questions to the VE was not error. *See Milliken v. Astrue*, 397 F. App'x 218, 222 (7th Cir. 2010) ("Here, the ALJ's hypothetical to the VE was limited to [light] work and thus incorporated [the doctor's] assessment that given [claimant]'s mental limitations, [he] could still perform [light] work. Accordingly, we conclude that the ALJ adequately accounted for [claimant's] limitations in concentration, persistence and pace.").

## CONCLUSION

For the foregoing reasons, Plaintiff Worden's motion for summary judgment [Doc. No. 19] is DENIED and the Commissioner's cross-motion for summary judgment [Doc. No. 24] is GRANTED. Judgment will be entered in favor of Defendant.

**SO ORDERED.**                                  **ENTERED:**

**DATE:    February 19, 2015**              _____
                                            **HON. MARIA VALDEZ**
                                            **United States Magistrate Judge**